IIn THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SCOTT WILLIAM DAVIDSON,    )
         Plaintiff,    )
             )
         v.    )    2:15-CV-106
             )
             )
COMMISSIONER OF SOCIAL    )
SECURITY,    )
         Defendant.    )

REPORT AND RECOMMENDATION

I.    Recommendation

It is respectfully recommended that the plaintiff's motion for summary judgment (ECF No. 12) be denied; that the defendant's motion for summary judgment (ECF No. 14) be granted, and that the decision of the Commissioner be affirmed.

II.    Report

Presently before the Court for disposition are cross motions for summary judgment.

On January 27, 2015, Scott William Davidson by his counsel, filed a complaint pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. §405(g) for review of the Commissioner's final determination disallowing his claim for a period of disability or for disability insurance benefits under Sections 216(i) and 223 of the Social Security Act, as amended, 42 U.S.C. §§416(i) and 423 based on his failure to meet the special earnings requirement of the act on or before March 31, 1999 (R.185).

On September 13, 2011 the plaintiff filed an application for disability benefits alleging that he had been disabled since September 12, 1994 (R.164-169), and benefits were denied on December 6, 2011(R.91-94). On February 7, 2012, the plaintiff requested a hearing (R.95-96)

1

and pursuant to that request a hearing was held on March 20, 2013 (R.37-83). In a decision dated May 17, 2013, benefits were denied (R.21-33), and on July 12, 2013, reconsideration was requested (R.9-16). Upon reconsideration and in a decision dated December 3, 2014, the Appeals Council affirmed the prior determination (R.1-4). On January 27, 2015, the instant complaint was filed.

In reviewing an administrative determination of the Commissioner, the question before any court is whether there is substantial evidence in the agency record to support the findings of the Commissioner that the plaintiff failed to sustain his burden of demonstrating that he was disabled within the meaning of the Social Security Act.

It is provided in 42 U.S.C. Section 405(g) that:

The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive....

Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Johnson v. Commissioner. 529 F.3d 198 (3d Cir.2008) and the court may not set aside a decision supported by substantial evidence. Hartranft v. Apfel, 181 F.3d 358 (3d Cir.1999).

At the hearing held on March 20, 2013, (R.37-83), the plaintiff appeared with counsel and testified that he was born on May 16, 1960 (R.45); that he presently works three weeks a year as an artist/photographer (R.46,68); that he also works a few hours a day or all day at art festivals (R.47-48); that he also performed temporary seasonal postal work (R.50-51); that he has been unable to work since 1994 when he fell off a roof (R.52); that he takes medication to control his pain (R.53); that he experiences low-grade headaches (R.55); that his symptoms are

aggravated by concentration and physical labor (R.57) and there are extended periods when he rests and does nothing (R.70).

At the hearing a vocational expert was called upon to testify (R.75-82). She classified the plaintiff's prior work as very heavy skilled construction work (R.77-78). When asked to assume an individual of the plaintiff's age, with a college education and his prior work experience, the witness testified that such an individual could not return to the plaintiff's prior construction work (R.78-79), however, she also testified that there was a wide range of work such an individual could perform (R.79). When asked to assume an individual of the plaintiff's age, education and work experience whose ability to function was seriously limited, she testified that such an individual could not perform the plaintiff's prior work or any other work (R.79-80). Additionally, the witness testified that if the individual experienced repeated episodes of deterioration or decompensation, he could not be employed (R.81).

The issue before the Court for immediate resolution is a determination of whether or not there is substantial evidence to support the findings of the Commissioner that the plaintiff was not disabled within the meaning of the Act on or before March 31, 1999.

The term "disability" is defined in 42 U.S.C. Section 423(d)(1)(A) as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months....

For purposes of the foregoing, the requirements for a disability determination are provided in 42 U.S.C. Section 423(d)(2)(A):

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate

area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence ... "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. Section 423(d)(3). These provisions are also applied for purposes of establishing a period of disability. 42 U.S.C. Section 416(i)(2)(A).

While these statutory provisions have been regarded as "very harsh," nevertheless, they must be followed by the courts. NLRB v. Stamina Brothers, 466 F.2d 564 (3d Cir. 1972); Choric v. Finch, 438 F.2d 342 (3d Cir. 1971); Woods v. Finch, 428 F.2d 469 (3d Cir. 1970). Thus, it must be determined whether or not there is substantial evidence in the record to support the conclusion of the Commissioner that the plaintiff was not disabled within the meaning of the Social Security Act.

For this purpose, certain medical evidence was reviewed.

In a report of a psychiatric evaluation conducted on April 11, 1995, Dr. James D. Duffy noted an improvement in plaintiff's post-concussion syndrome but headache problems. Possible use of Zoloft for his sleep difficulty was suggested. No neuropsychiatric or psychotherapy treatment was deemed necessary (R.233-235).

The plaintiff last met the special earnings requirements of the act on March 31, 1999 (R.185).

As a result of his September 12, 1994 injury, the plaintiff compromised and settled his Worker's compensation claim on August 5, 2002 (R.152-163).

4

The plaintiff received chiropractic treatments between January 6, 2004 and January 23, 2008 for neck pain and headaches (R.236-280).

The plaintiff was treated by Dr. Ravi Kant at the neuropsychiatry center between June 22, 2005 and November 16, 2010 for a mood and cognitive disorder. Medication was prescribed (R.281-299).

In a medical assessment of work related ability completed on March 2, 2012, Dr. Ramesh Kaul noted a mood and cognitive disorder. Emotional lability and cognitive dysfunction were reported (R.316-318).

On September 14, 2012, the plaintiff's chiropractor stated that the plaintiff could not work due to pain, but that if the pain could be reduced limited work was possible. It was noted that the plaintiff could occasionally lift up to ten pounds, stand or walk for less than two hours and sit for less than six hours (R.319-322, 333-341).

In a report covering the period from March 15, 1996 through January 25, 2013, Dr. Ravi Kent noted mood and cognitive issues which in 2013 were said to impose moderate limitations on his daily living. Medication was prescribed (R.323-325, 326-332, 342-349, 350-359, and 360-395).

In reviewing a disability claim, in addition to considering the medical and vocational evidence, the Commissioner must consider subjective symptoms. <u>Baerga v. Richardson</u>, 500 F.2d 309 (3d Cir. 1974). As the court stated in <u>Bittel v. Richardson</u>, 441 F.2d 1193, 1195 (3d Cir. 1971):

> Symptoms which are real to the claimant, although unaccompanied by objective medical data, may support a claim for disability benefits, providing, of course, the claimant satisfies the requisite burden of proof.

In <u>Good</u> v. <u>Weinberger</u>, 389 F. Supp. 350, 353 (W.D. Pa. 1975), the Court stated:

> Bittel seeks to help those claimants with cases that so often fall within the spirit--but not the letter--of the Act. That plaintiff did not satisfy the factfinder in this regard, so long as proper criteria were used, is not for us to question.

The applicable regulations require more explicit findings concerning the various vocational facts which the Act requires to be considered in making findings of disability in some cases. The regulations, published at 20 C.F.R. §§404.1501, et seq., set forth an orderly and logical sequential process for evaluating all disability claims. In this sequence, the Administrative Law Judge must first decide whether the plaintiff is engaging in substantial gainful activity. If not, then the severity of the plaintiff's impairment must be considered. If the impairment is severe, then it must be determined whether he meets or equals the "Listings of Impairments" in Appendix 1 of the Regulations which the Commissioner has deemed of sufficient severity to establish disability. If the impairment does not meet or equal the Listings, then it must be ascertained whether he can do his past relevant work. If not, then the residual functional capacity of the plaintiff must be ascertained, considering all the medical evidence in the file. The finding of residual functional capacity is the key to the remainder of findings under the new regulations. If the plaintiff's impairment is exertional only, (i.e. one which limits the strength he can exert in engaging in work activity), and if his impairment enables him to do sustained work of a sedentary, light or medium nature, and the findings of age, education and work experience, made by the Administrative Law Judge coincide precisely with one of the rules set forth in Appendix 2 to the regulations, an appropriate finding is made. If the facts of the specific case do not coincide with the parameters of one of the rules, or if the plaintiff has mixed exertional and non-exertional impairments, then the rules in Appendix 2 are used as guidelines in assisting the Administrative Law Judge to properly weigh all relevant medical and vocational facts.

Based on the evidence presented, the Commissioner concluded:

The claimant last met the insured status requirements of the Social Security Act on March 31, 1999.

The claimant did not engage in substantial gainful activity during the periods from his alleged onset date of September 12, 1994 through his date last insured of March 31, 1999…

Through the date last insured, the claimant had the following severe impairments: cognitive disorder, status post traumatic brain injury, post-concussion syndrome, headache, left labyrinth dysfunction and cervical sprain…

Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1…

Listing 1.04, disorders of the spine, is not met because the record does not demonstrate compromise of a nerve root or the spinal cord…

Although headache is not a listed impairment, this has been considered within the framework of Listing 11.03 regarding listing equivalent frequency or severity. However, listing level severity is not documented…

The severity of the claimant's mental impairments (including the effects of traumatic brain injury) did not meet or medically equal the criteria of listing 12.02…

In activities of daily living and social functioning, the claimant had mild restriction…

With regard to concentration, persistence or pace, the claimant had moderate difficulties…

As for episodes of decompensation, the claimant had experienced no episodes of decompensation, which have been of extended duration…

After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work …

Whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record.

The claimant alleges disability due to the effects of an injury in 1994 when he fell off a roof with resulting brain injury, spinal injury, and post-concussive syndrome. The claimant testified that following the injury he experienced vertigo, persistent headaches, confusion, sensitivity to cold, and sleep difficulty… The claimant also described problems with sustained concentration and a tendency to become overstimulated with loud noises. However, he also confirmed a significant improvement in his headaches, sleep, and other symptoms with Prozac which he started in 1997. The claimant testified that treatment following his injury included care through a rehabilitation center for vocational therapy, and treatment with Ravi Kant, M.D. through the Head Injury Clinic from 1996. Although he has been engaged in self-employed work as a photographer, the claimant testified that he is only able to do this because he can set his own schedule, and that he has difficulty sustaining his temporary seasonal jobs at the post office for a few weeks over the holidays, requiring periods of rest following work. The claimant also reported problems with depression …

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible…

Workers' compensation records confirm that the claimant was awarded workers' compensation benefits from 1994 until September 2002 due to acute traumatic cervical sprain/strain and C-5 vertigo following an injury on September 12, 1994. Although there is support for finding some work-related restrictions during the relevant period due to the effects of the claimant's injury, objective findings were limited, treatment records are scarce, and the overall evidence does not support a finding of disability…

In an April 1995 psychiatric evaluation of post-concussive disorder with James D. Duffy, M.D., it was noted that the claimant had fallen 20 feet off a roof while working as a carpenter in September 1994, hitting his shoulder and head, although with no loss of consciousness. The report further confirmed that no medical interventions had been made at the time, and a computerized tomography (CT) and magnetic resonance imaging (MRI) were both normal…

Despite the claimant's subjective symptoms, a mental status examination was unremarkable…

As for more recent evidence, Dr. Kant's notes in April 2002 confirmed that the claimant was stable on Prozac and doing well, with a note that he would be graduating from college soon and had been able to do fairly well in his studies. When the claimant settled his workers' compensation claim in September 2002, he confirmed that he had graduated from college and was planning to apply for jobs…

> Regarding the claimant's physical condition, other than chiropractic care, there is no record of any significant treatment for the claimant's neck or back pain since his alleged onset of disability…
>
> The opinions of Dr. Kant [as recently as January 2013] are given no weight for a number of reasons. Specifically, the claimant's demonstrated ability to operate his own photography business, attend art fairs, continue with ongoing part-time work, and attainment of a college degree clearly refute Dr. Kant's assessment of a disabling level of impairment…
>
> The September 2012 assessment by the claimant's chiropractor of a disabling level of impairment is similarly given minimal weight.
>
> Regarding the claimant's credibility, where there is support for finding some work-related restrictions during the relevant period due to the claimant's 1994 injury, a finding of disability is not indicated… The claimant's documented activities and achievements, including regular work activity and obtaining a college degree in 2002 … also detract from the credibility of his allegations of disability.
>
> In summary, the above residual functional capacity assessment, limiting the claimant to only light work with significant further hazard, environmental, and mental restrictions, represents the claimant's problems at their worst, and gives him much benefit of the doubt…
>
> Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed…
>
> Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, the claimant was capable of making a successful adjustment to other work that existed in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate… (R.23-33).

The record demonstrates that the plaintiff suffered a work related injury on September 12, 1994. Although the evidence is scarce there is no indication that this injury was very severe and since that time the plaintiff has worked and completed his college education. However, he last met the special earnings requirements of the Act on March 31, 1999, and the burden rests on the plaintiff to demonstrate that he was totally disabled on or before that date and he has not done so.

9

Additionally, the determination made by the Commissioner involved credibility determinations which are left for her resolution. Diaz v. Commissioner, 577 F.3d 500, 506 (3d Cir.2009). Accordingly, there is substantial evidence to support the Commissioner's conclusion that the plaintiff was not disabled within the meaning of the Act on or before September 12, 1994.

Summary judgment is appropriate when there are no disputed material issues of fact, and the movant is entitled to judgment as a matter of law. Lichtenstein v. U.P.M.C., 691 F.3d 294, 300 (3d Cir. 2012). In the instant case, there are no material factual issues in dispute, and it appears that the Commissioner's conclusion is supported by substantial evidence. For this reason, it is recommended that the plaintiff's motion for summary judgment be denied; that the defendant's motion for summary judgment be granted, and that the decision of the Commissioner be affirmed.

Within fourteen (14) days after being served, any party may serve and file written objections to the Report and Recommendation. Failure to file timely objections may constitute a waiver of any appellate rights.

Respectfully submitted,

s/ Robert C. Mitchell,

Entered: August 12, 2015    United States Magistrate Judge